J. S08029/17

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: A.J.B., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: K.B., NATURAL FATHER | : | No. 1387 WDA 2016 |

Appeal from the Order Entered August 19, 2016,
in the Court of Common Pleas of Allegheny County
Orphans' Court Division at No. CP-02-0000071-2016

BEFORE: GANTMAN, P.J., FORD ELLIOTT, P.J.E., AND SOLANO, J.

MEMORANDUM BY FORD ELLIOTT, P.J.E.: **FILED FEBRUARY 15, 2017**

K.B. ("Father") appeals from the order entered August 19, 2016, in the Court of Common Pleas of Allegheny County, Orphans' Court Division, granting the petition of the Allegheny County Office of Children, Youth and Families ("OCYF") and involuntarily terminating his parental rights to his minor, dependent daughter, A.J.B. (the "Child"), born in December of 2014, pursuant to the Adoption Act, 23 Pa.C.S.A. § 2511(a)(2), (5), (8), and (b).[1,2] After review, we affirm.

---

[1] By the same order, the trial court also involuntarily terminated the parental rights of Child's mother, S.J.S. a/k/a S.J.L. a/k/a S.L. ("Mother"), also pursuant to Section 2511(a)(2), (5), (8), and (b), as well as Child's legal father, Mother's former husband, S.L. ("Legal Father"), pursuant to Section 2511(a)(3) and (b). Counsel for Legal Father sent a letter in response to OCYF's termination petition, advising that Legal Father waived any potential rights to Child and would not oppose the petition and/or appear for hearing. (**See** Exhibit CYF 1.) Neither Mother nor Legal Father have appealed, nor are they parties to this appeal.

[2] We note that the guardian **ad litem** filed a brief in support of the termination of Father's parental rights.

The trial court summarized the relevant procedural and factual history, in part, as follows:

> Child first came to the attention of OCYF after Mother tested positive for opiates at the time of Child's birth. The Child tested positive for morphine and codeine. The Child came into care via an Emergency Custody Authorization on December 29, 2014. Father had pending criminal charges at the time of the Child's release. The Child was placed with Paternal Grandparents on that date.
>
> A Shelter Hearing was held on January 2, 2015, where the Child was ordered to remain with Paternal Grandparents and Father was given supervised visits three times per week. On March 4, 2015, the Child was adjudicated dependent pursuant to 42 Pa.C.S. § 6302 Dependent Child (1). Father was incarcerated at the time and agreed to the fact that he was not ready, willing, and able to care for the Child. Father[] was given one visit per week at the OCYF office. Father was ordered to have a Drug and Alcohol evaluation and comply with recommendations, submit to random drug screens, attend Domestic Violence classes, enroll in Anger Management treatment, and complete Parenting classes.
>
> . . . .
>
> At the dependency adjudication on March 4, 2015, Father was given visitation once a week at the OCYF office. Father's visits were then increased on September 2, 2015, to two times per week. . . . Father was consistent in his visitation prior to incarceration on October 23, 2015. On May 25, 2016, this Court permitted Father to have contact visits with the Child in jail once per month. Father had a visit with the Child on July 21, 2016.
>
> Father has an extensive criminal record in both Allegheny County and Washington County. On January 7, 2016, Father was sentenced for DUI,

> Burglary, Aggravated Assault, Unlawful Restraint, Terroristic Threats, Reckless Endangerment, Criminal Mischief, and Conspiracy. On March 2, 2016, Father pled guilty to Manufacture, Delivery, or Possession with Intent to Manufacture or Deliver, and Conspiracy. Charges for Intentional Possession of a Controlled Substance, Use or Possession of Drug Paraphernalia, and Resisting Arrest were nolle prossed. Father's minimum date of release is October 2019. Father's maximum date of release is October 2023. He is presently incarcerated at SCI Mercer.

Trial court opinion, 11/14/16 at 2-4 (footnotes omitted; citations to record omitted).

The trial court held regular permanency review hearings in this matter. Throughout these reviews, the trial court maintained Child's commitment and placement, and permanency goal.

On April 15, 2016, OCYF filed petitions to involuntarily terminate parental rights. Thereafter, the trial court conducted a hearing on August 19, 2016. In support of its petitions, OCYF presented the testimony of OCYF caseworker, Patrick Houy. Further, counsel stipulated to the admission of the reports of Eric Bernstein, PsyD.,[3] and Terry O'Hara, Ph.D.,[4] psychologists who conducted individual and interactional evaluations of Mother, Father, and Child, and an interactional evaluation of

---

[3] Dr. Bernstein's report subsequent to evaluations on April 2, 2016 and April 7, 2016, was marked and admitted as Exhibit CYF 7.

[4] Dr. O'Hara's report subsequent to evaluation on May 2, 2016, was marked and admitted as Exhibit CYF 8.

Paternal Grandparents and Child, respectively. (Notes of testimony, 8/19/16 at 62-63.) Father presented the testimony of Arsenal Family and Children's Center parent mentor, Margaret McGroarty.[5] Father additionally testified on his own behalf. Mother, although not present, was represented by counsel.

By order entered August 19, 2016, the trial court involuntarily terminated Father's parental rights to Child.[6] On September 16, 2016, Father, through appointed counsel, filed a timely notice of appeal. Father, however, did not file a concise statement of errors complained of on appeal with his notice of appeal, as required by Pa.R.A.P. 1925(a)(2)(i) and (b).[7] By order dated September 27, 2016, this court directed Father to file and serve a statement of errors complained of on appeal, no later than October 6, 2016. On October 12, 2016, this court dismissed Father's appeal **sua sponte**, due to noncompliance. Thereafter, pursuant to application, on October 24, 2016, this court reinstated Father's appeal. Father, through

---

[5] Upon review of Ms. McGroarty's Individual Parent-Child Mentoring Report, it is believed that her name is incorrectly referred to in the notes of testimony as Martha. (**See** Father's Exhibit A.)

[6] The trial court announced its decision, memorialized by subsequent order, on the record at the conclusion of the hearing on April 19, 2016.

[7] In children's fast track matters, such as this matter, a concise statement of errors complained of on appeal is required to be submitted with the notice of appeal. Pa.R.A.P. 1925(a)(2)(i).

appointed counsel, filed a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b) on the same date.[8]

On appeal, Father raises the following issue for our review:

> Whether the Trial Court abused its discretion and/or err[ed] as a matter of law by determining that termination of Father's parental rights would meet the needs and welfare of the child under Section 2511 (b), in spite of witness testimony to the contrary showing a strong bond between father and daughter[?]

Father's brief at 7.

In matters involving involuntary termination of parental rights, our standard of review is as follows:

> The standard of review in termination of parental rights cases requires appellate courts "to accept the findings of fact and credibility determinations of the trial court if they are supported by the record." *In re Adoption of S.P.*, 47 A.3d 817, 826 (Pa. 2012). "If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion." *Id.* "[A] decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will." *Id.* The trial court's decision, however, should

---

[8] As Father ultimately filed a statement on the same date as the reinstatement of his appeal, only approximately one month after Father was originally ordered by this court to file a statement, we do not penalize him. *See In re K.T.E.L.*, 983 A.2d 745 (Pa.Super. 2009) (failure to file a Rule 1925(b) statement concurrently with a children's fast track appeal is considered a defective notice of appeal, to be disposed of on a case-by-case basis, and will not be dismissed since failure to file the statement is a violation of a procedural rule); *cf. Mudge v. Mudge*, 6 A.3d 1031 (Pa.Super. 2011), and *J.M.R. v. J.M.*, 1 A.3d 902 (Pa.Super. 2010) (failure to file a Rule 1925(b) statement, when ordered by Superior Court, will result in a waiver of all issues on appeal).

> not be reversed merely because the record would support a different result. *Id.* at 827. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings. *See In re R.J.T.*, 9 A.3d [1179, 1190 (Pa. 2010)].

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013). "The trial court is free to believe all, part, or none of the evidence presented and is likewise free to make all credibility determinations and resolve conflicts in the evidence." *In re M.G.*, 855 A.2d 68, 73-74 (Pa.Super. 2004) (citation omitted). "[I]f competent evidence supports the trial court's findings, we will affirm even if the record could also support the opposite result." *In re Adoption of T.B.B.,* 835 A.2d 387, 394 (Pa.Super. 2003) (citation omitted).

The termination of parental rights is guided by Section 2511 of the Adoption Act, 23 Pa.C.S.A. §§ 2101-2938, which requires a bifurcated analysis of the grounds for termination followed by the needs and welfare of the child.

> Our case law has made clear that under Section 2511, the court must engage in a bifurcated process prior to terminating parental rights. Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and

status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa.Super. 2007) (citations omitted). We have defined clear and convincing evidence as that which is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *In re C.S.*, 761 A.2d 1197, 1201 (Pa.Super. 2000) (*en banc*), quoting *Matter of Adoption of Charles E.D.M., II*, 708 A.2d 88, 91 (Pa. 1998).

In this case, the trial court terminated Father's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(2), (5), and (8), as well as (b). We have long held that, in order to affirm a termination of parental rights, we need only agree with the trial court as to any one subsection of Section 2511(a), as well as Section 2511(b). *In re B.L.W.*, 843 A.2d 380, 384 (Pa.Super. 2004) (*en banc*). Here, Father does not challenge the trial court's finding of grounds for termination under Section 2511(a). We, therefore, analyze the court's termination pursuant to Section 2511(b) only, which provides as follows:

> **(b)** **Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition

> filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(b).

With regard to Section 2511(b), the Pennsylvania Supreme Court has stated as follows:

> [I]f the grounds for termination under subsection (a) are met, a court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S. § 2511(b). The emotional needs and welfare of the child have been properly interpreted to include "[i]ntangibles such as love, comfort, security, and stability." *In re K.M.*, 53 A.3d 781, 791 (Pa.Super. 2012). In *In re E.M.*, 620 A.2d [481, 485 (Pa. 1993)], this Court held that the determination of the child's "needs and welfare" requires consideration of the emotional bonds between the parent and child. The "utmost attention" should be paid to discerning the effect on the child of permanently severing the parental bond. *In re K.M.*, 53 A.3d at 791. However, as discussed below, evaluation of a child's bonds is not always an easy task.

*In re T.S.M.*, 71 A.3d at 267. "[I]n cases where there is no evidence of a bond between a parent and child, it is reasonable to infer that no bond exists. Accordingly, the extent of the bond-effect analysis necessarily depends on the circumstances of the particular case." *In re Adoption of J.M.*, 991 A.2d 321, 324 (Pa.Super. 2010) (citations omitted).

When evaluating a parental bond, "the court is not required to use expert testimony. Social workers and caseworkers can offer evaluations as

well. Additionally, Section 2511(b) does not require a formal bonding evaluation." *In re Z.P.*, 994 A.2d 1108, 1121 (Pa.Super. 2010), citing *In re K.K.R.-S.*, 958 A.2d 529, 533 (Pa.Super. 2008) (internal citations omitted).

Moreover,

> While a parent's emotional bond with his or her child is a major aspect of the subsection 2511(b) best-interest analysis, it is nonetheless only one of many factors to be considered by the court when determining what is in the best interest of the child.
>
> [I]n addition to a bond examination, the trial court can equally emphasize the safety needs of the child, and should also consider the intangibles, such as the love, comfort, security, and stability the child might have with the foster parent. . . .

*In re Adoption of C.D.R.*, 111 A.3d 1212, 1219 (Pa.Super. 2015), quoting *In re N.A.M.*, 33 A.3d 95, 103 (Pa.Super. 2011) (quotation marks and citations omitted).

Instantly, in examining Section 2511(b) and determining whether termination of Father's parental rights serves Child's needs and welfare, the trial court reasoned as follows:

> Here, this Court judiciously evaluated the bond between Father and Child and determined that there was no indication that an emotional bond exists to the extent that the termination of parental rights of Father would cause Child to suffer extreme emotional consequences. In reaching this conclusion, this Court weighed the totality of the circumstances and relied upon the testimony of Mr. Houy, and expert reports of Dr. Eric Bernstein, Psy.D., (hereinafter, "Dr. Bernstein"), psychologist

> for Allegheny Forensic Associates, and Dr. Terry O'Hara, Ph.D., (hereinafter "Dr. O'Hara["]), psychologist for Allegheny Forensic Associates.

Trial court opinion, 11/14/16 at 6 (citation omitted).

> This Court was within its discretion when it determined that severing the Child's bond with Father would not cause extreme emotional consequences. Any detriment that the child would have suffered from termination has already occurred because of Father's incarceration and absence from her life. Paternal Grandparents provide the Child with much needed stability and permanence. Therefore, considering the [totality of the circumstances], this Court concludes that the developmental, physical, and emotional needs and welfare of the Child would be best served by terminating Father's parental rights.

*Id.* at 8-9.

Father, however, argues that the trial court abused its discretion in determining termination of his parental rights satisfied Child's needs and welfare pursuant to Section 2511(b), despite evidence of a "strong bond" between him and Child. (Father's brief at 11.) Father avers that he consistently attended visits with Child, which were positive. Further, he attempted to maintain contact with Child after his incarceration. (*Id.* at 12.) Likewise, Father successfully completed Arsenal Family and Children's Center parenting program. (*Id.*) Therefore, Father posits, "The only way to ensure continued contact between the child and [her f]ather is to allow Father to maintain his parental rights. . . . [T]he possibility of future contact between Father and [Child], which contact best serves the child's needs and welfare,

is in jeopardy unless Father's parental rights are reinstated." (*Id.* at 14.) We disagree.

Upon review, the record supports the trial court's finding that Child's needs and welfare favor termination of Father's parental rights. Significantly, at the time of the hearing, Child had been out of parental care for a total of 20 months. (Notes of testimony, 8/19/16, at 51.) Although Father had visitation, it remained supervised. (*Id.* at 44.) Further, Father only had one visit with Child since October 2015 due to Father's incarceration. (*Id.* at 45-46, 55-56, 60-62.)

Moreover, while Dr. Bernstein, who conducted an individual evaluation of Father and interactional evaluation of Father and Child, noted that Father interacted well with Child, he expressed concern. (Exhibit OCYF 7 at 5, 8-9.) As observed, Father "approached his daughter with animation and affection. He gave her attention and support as he held her." (*Id.* at 5.) In fact, Dr. Bernstein indicated a "gentleness" about Father as it related to Child. (*Id.* at 8.) Nonetheless, as described by Dr. Bernstein, "[Father] spoke coarsely and with brimming anger. He appeared to be quite reactive and impulsive to the extent that if and when challenged by his perception he would likely react with physical confrontation and threatening behavior. He appears to be particularly sensitive to any perceived judgment or hostility." (*Id.*) Therefore, Dr. Bernstein further summarized his impressions of Father and their potential affect and impact as follows:

> [Father] presented as an intense, easily angered, and reactive adult who is susceptible to confrontation. To the extent that he distrusts others, feels isolated and alienated by others and constantly judged by others, he is likely to continue struggling with the intense anger and discovering himself in positions of difficulties with the law. . . . If he is to be incarcerated, his access to his daughter would be compromised and thus his daughter would be without his potential to positively influence her in her life. I also have concerns about the way in which [Father] communicates to the extent that as much as he presented sensitively in interaction with his daughter, I am unsure as to how he would ultimately influence her with the free use of profanity laden with intense anger. . . .

*Id.* at 9.

Dr. Bernstein diagnosed Father with Cannabis Dependence; Mood Disorder NOS; and Personality Disorder, "Provisional" with Antisocial Paranoid Features. (*Id.* at 8.) He recommended domestic violence classes to "increase awareness of the importance of communication" and how to "role model . . . by effectively problem solving without the flirting with violence," as well as therapy focusing on communication and anger management. (*Id.* at 9.)

Furthermore, Child is in a pre-adoptive home with Paternal Grandparents with whom she has formed a positive, strong, and supportive relationship. (Notes of testimony, 8/19/16 at 53-54.) As testified by OCYF caseworker Patrick Houy, "[Child]'s doing very well in the home. . . . She has a good, strong bond with the grandparents. She looks to them for attention, has a good relationship with them, and she's just overall doing

very well." (*Id.* at 53.) He further stated that, "she turns to them for attention when needed, for comfort if she slips and falls and stuff like that, and she just responds very well to them, and you can tell she has a good nurturing relationship with them." (*Id.*) As assessed by Mr. Houy, Child is "happy." (*Id.* at 54.)

Likewise, Dr. O'Hara, who performed an interactional evaluation of Paternal Grandparents and Child, highlighted Paternal Grandparents' positive parenting skills, as well as a bond between Paternal Grandparents and Child. (Exhibit OCYF 8 at 5-7.) Specifically, as it relates to parenting skills, Dr. O'Hara noted, "[Paternal Grandparents] exhibited several positive parenting skills, as they were calm and relaxed with [Child], praised her, and interacted well with her. [Paternal Grandmother] appropriately supervised [Child], was playful and interactive with her, redirected her well, and distracted her appropriately." (*Id.* at 6.) In addition, and of importance, Dr. O'Hara observed a bond between Paternal Grandparents and Child.

> This examiner noted [Child] to exhibit several components of a secure attachment with [Paternal Grandparents]. For example, she utilized [Paternal Grandmother] as a secure base, where she "checked in" with [Paternal Grandmother], especially during the first part of the evaluation. Further, she spontaneously and frequently directed herself to [Paternal Grandparents], was euthymic throughout the evaluation, often smiled, and showed curiosity and autonomy.

*Id.*

Referencing Paternal Grandparents' stability, as well as positive parenting skills, Dr. O'Hara recognized, "[Child]'s progress thus far is, at least in part, a reflection of [Paternal Grandparents'] care of her." (**Id.** at 7.) While acknowledging Paternal Grandparents' age, he indicated a lack of evidence that "[Paternal Grandparents] are not able to reasonably care for [Child]'s needs and welfare at this time and/or in the near future." (**Id.**) As a result, Dr. O'Hara opined that Paternal Grandparents outweighed any possible detriment caused by the termination of parental rights. (**Id.** at 7.)

Thus, we conclude that the trial court did not abuse its discretion in finding termination of Father's parental rights serves Child's needs and welfare pursuant to Section 2511(b).

Accordingly, based on the foregoing analysis of the trial court's termination of Father's parental rights, we affirm the order of the trial court.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/15/2017