J-A02045-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| M.J.R., | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| K.S.U | |
| Appellee | No. 1333 WDA 2017 |

Appeal from the Order entered August 21, 2017,
in the Court of Common Pleas of Allegheny County,
Family Court, at No(s): FD 12-08295-008

BEFORE:  BOWES, J., OLSON, J., and KUNSELMAN, J.

MEMORANDUM BY KUNSELMAN, J.:                FILED: March 1, 2018

Father, M.J.R., appeals from the order granting Mother,  K.S.U., primary physical and primary legal custody of the parties' seven-year-old son, V.R.[1] Because the trial court's findings of fact and custody analysis were not abuses of discretion, and therefore, the trial court did not otherwise err in its custody decision, we affirm.

The trial court summarized the relevant facts as follows:

---

[1] The trial court ordered that the parties shall share legal custody of the child "except that Mother shall have legal custody as [it] relates to medical decisions. She should inform and consult Father with an eye toward agreement first. If the [p]arties are unable to agree, Mother may make the decision. Father has the right to participate if he chooses." The effect of a so-called tie-breaker clause is an award of legal custody, *per se*. We note that Father has not appealed this legal custody award.

The parties never married but moved in together before the child's birth [in 2010]. Their relationship was often volatile, and the parties ceased living together in 2012. Mother claims Father was controlling and abusive. Father claims Mother was violent and that she abandoned the child when she left him.

Mother has a daughter from a previous relationship, the child's [ten-year-old half-sister, T.]. Mother and her fiancé currently live in Pittsburgh's North Hills. [Also, in the home are the fiancé's children, the child's soon-to-be step siblings.] Father is married, and he and his wife are expecting a baby. They currently live in the Elizabeth Forward School District, which is where the subject child attended school previously. Father is a chiropractor with a chiropractic business which operates locally and in Chicago. Mother is a registered nurse.

Both parties filed for primary custody in 2012. A consent custody order was filed on June 17, 2014, but the parties' custody arrangements have been fraught with difficulty, with both Parties again seeking primary custody of the child. Throughout the custody matter, the parties have been involved in contentious support litigation. In January of 2016, Father filed for modification of custody, seeking primary custody and on July 18, 2016, he filed a Motion for Status Quo, asking that the child stay in the Elizabeth Forward School District. The trial court granted that relief on an interim basis since a School Choice hearing could not be scheduled until October of 2016. That hearing was subsequently cancelled, and the child remained in Elizabeth Forward for first grade.

On March 10, 2017, Mother filed a petition seeking legal custody regarding medical decisions and the right of first refusal. Mother alleged that the child had become very ill with a high fever during Father's custody time, but that Father was in Chicago and so the child was cared for by various family members. She alleged Father forbade his family from administering any medicines to aid the child or reduce his fever. She also claimed she was not informed that the child would not be with Father during his custody time or of the child's illness for days. Upon taking custody of the child, Mother took him to the hospital as she could not take him to a pediatrician because the child was

unvaccinated at the time and exhibiting signs of serious illness. In response, Father, essentially, denied Mother's allegations and indicated that she was blowing the matter out of proportion. [The trial court] gave Mother right of first refusal, but it reserved the question of legal custody regarding medical decisions for trial.

A three-day custody trial was scheduled before the trial court for August 1, 3, and 14, 2017. An additional hour was scheduled for August 21, 2017 in order to obtain the testimony of Mother's 10-year-old daughter, T., who was not available on any of the other days of trial.

At trial, the court heard from both parties, Father's wife, Mother's fiancé, and members of Father's family. The trial court also heard the psychological evaluator, Dr. Jan Marlan of Allegheny Forensic Associates, whose report was entered into evidence by Mother. The trial court interviewed the child, as well as Mother's daughter.

The trial court often found Father's testimony not to be credible. Instead, the court found that he attempted to manipulate the facts to present whatever picture of himself he believed would win favor with the trial court. This was especially evident relating to two aspects of the child's life – the child's medical treatment including vaccinations, and the child's involvement in athletics. Instead of focusing on the best interests of the child, Father was more concerned with his own views as to the child's athletic performance and his own prowess as a medical care provider.

In general, the trial court found Mother's testimony to be much more truthful, and she presented as being more concerned with [the child's] well-being. The trial court's impressions were in line with and bolstered by the similar findings of the psychological evaluator.

Accordingly, the trial court found Mother to be the more appropriate party to have primary custody during the school year as well as the parent who should have legal custody over medical decisions.

Trial Court Opinion, 10/13/17, at 1-3 (footnote omitted).

The trial court issued its custody order and findings of fact on August 21, 2017. Among other critical factors was that the parties lived approximately 50 minutes from each other. The trial court determined that the distance was simply unworkable for shared physical custody during the school year. However, shared custody would revert back on a week-on-week-off basis during the child's summer break. Father appealed.

He raises the following claims:

1. Did the trial court err and abuse its discretion in failing to award Father primary physical custody of the child, contrary to the best interest of the child where the totality of the facts and evidence of record elicited at trial support an award of primary custody to Father, when considering the same in light of the factors identified in 23 Pa.C.S.A. §5328?

2. Did the trial court err and abuse its discretion in ordering a schedule which will serve to damage and substantially, but negatively, impact the relationship between Father and the child, creating periods where the child will go without contact with Father for up to twelve (12) days?

3. Did the trial court err and abuse its discretion in considering statutory factors and evidence regarding a child not at issue in this case, and in considering unsworn testimony of visitors in those factors?

Father's Brief at 12.

Our scope and standard of review of child custody orders are as follows:

[O]ur scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses

first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

*J.M.R. v. J.M.,* 1 A.3d 902, 911 (Pa. Super. 2010) (*quoting* **Collins v. Collins**, 897 A.2d 466, 471 (Pa. Super. 2006)).

"The primary concern in any custody case is the best interests of the child." **J.M.R.,** 1 A.3d at 900. "The best-interests standard, decided on a case-by-case basis, considers all factors that legitimately have an effect upon the child's physical, intellectual, moral, and spiritual well-being." **Id.** (*citing* **Saintz v. Rinker**, 902 A.2d 509, 512 (Pa. Super. 2006)). When determining whether modification of a custody order "is in a child's best interest, the court has an obligation to consider all relevant factors that could affect the child's well-being." **Id.** (*quoting* **Ketterer v. Seifert**, 902 A.2d 533, 539 (Pa. Super. 2006)).

Specifically, pursuant to 23 Pa.C.S.A. § 5328(a), trial court must analyze the various factors set forth by the legislature:

> In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:
>
> (1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.
>
> (2) The present and past abuse committed by a party or member of the party's household, whether there is a

- 5 -

continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(2.1) The information set forth in section 5329.1(a) (relating to consideration of child abuse and involvement with protective services).

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S.A. § 5328(a). Further, the "party seeking modification of custody arrangements has the burden to show that modification is in the child's best interest." *J.M.R.,* 1 A.3d at 911.

Father's first issue challenges 10 of the trial court's 16 custody factor determinations. Father lists these as examples of the trial court's fatally deficient analysis and/or as examples of determinations being against the weight of the evidence. The totality of these faults, Father contends, constitutes reversible error.

Initially, we note that the Custody Act requires the trial court to "delineate the reasons for its decision on the record in open court or in a written opinion or order." 23 Pa.C.S.A. §5328(d). We have explained that the trial court must do this prior to the deadline by which a litigant must file a notice of appeal, and preferably at the time the custody order is issued or shortly thereafter. *See C.B. v. J.B.,* 65 A.3d 946 (Pa. Super. 2013). In the instant case, we note that the trial court issued findings of fact contemporaneously with the custody order. Upon the filing of Father's appeal, the trial court then submitted its 1925(a) opinion in accordance with the Rules of Appellate Procedure.

As such, we must consider whether the trial court's findings of fact are deficient. To that end, we have further explained "[t]he Custody Act only

requires that the trial court articulate the reasons for its custody decision […] taking into consideration the enumerated [23 Pa.C.S.A. § 5328] factors." **M.J.M. v. M.L.G.**, 63 A.3d 331, 336 (Pa. Super. 2013). "[T]here is no required amount of detail for the trial court's explanation; all that is required is that the enumerated factors are considered and that the custody decision is based on those considerations." **Id**.

We find the trial court's pre-opinion findings substantially complied with 23 Pa.C.S.A. § 5328(d). All the factors were identified as being either favorable to a parent, or neutral, or inapplicable. To be clear, some of the trial court's pre-opinion findings provided no detail; the trial court would do well to provide a more thorough analysis in the future, outlining at least the primary reasons for its findings, either in writing or on the record. This can always be supplemented later if a party appeals. Otherwise the parties and this Court cannot determine the trial court's rationale for its decision. In this instance, we do not believe the deficiencies are such that this Court is obligated to remand the matter back to the trial court for a supplemental analysis. While the court's findings as to some factors, **e.g.**, § 5328(a)(1), were largely devoid of detail compared to others, **e.g.**, § 5328(a)(9)-(10), all determinations were supported by the evidence. Father was able to identify which of the factors the trial court found against him, and he was able to articulate to us why these findings were against the weight of the evidence. We discuss sequentially those factors that Father disputes.

In terms of § 5328(a)(1), which party would best encourage the relationship with the noncustodial party, the trial court found Mother's testimony to be credible and Father's testimony not credible. Mother testified that Father did not permit contact between Mother and the child during Father's custodial times. Mother further testified that Father has withheld the child in the past, *e.g.*, when Mother filed for child support. The record supports the trial court's determination that this factor favors Mother.

In terms of § 5328(a)(2), the trial court found Mother's testimony about the abuse she suffered at the hands of Father to be credible. The trial court also noted that Mother's other daughter, T., who is not related to Father and not the subject of these proceedings, testified that she was also afraid of Father when she lived with him. Father asserts as evidence of the trial court's error, the fact that the court cited T.'s testimony in its findings but downplayed it in the trial court's opinion. The argument fails; even if we were to ignore the T.'s testimony, the finding is still supported by Mother's testimony.

A discussion of § 5328(a)(4), which considers the child's need for stability, should be made in conjunction with § 5328(a)(11), which pertains to the proximity of the parties' residences. The proximity finding is a critical one. The parties reside approximately 50 minutes apart. The trial court correctly noted that shared physical custody is impractical. Even if the parties could manage the commute, forcing the same on a child would adversely affect his stability. Father argues that because the child has attended kindergarten and first grade in the Elizabeth Forward School District, the

stability and continuity factor favors him. But, Father's argument suggests continuity for its own sake. This line of reasoning ignores the realities on the ground. Despite Father's claim that Mother is nomadic, the record reflects that Father has moved around the area as well. It was only by default that the child remained enrolled in the Elizabeth Forward School District. His argument does not change the fact that Mother is now rooted nearly an hour away, making the status quo untenable.

The trial court found that it would not necessarily be in the child's best interest to stay in the same school district simply for the sake of staying in the same school district. The trial court was within its discretion to arrive at this conclusion. The trial court observed that the child possesses the ability to succeed despite transferring to a new school district. Moreover, as the discussion below will reveal, it was the child's preference to transfer. It was within the trial court's discretion to limit § 5328(a)(11)'s inquiry to the physical distance between the parties, rather to assign cause or fault behind the distance. It was also within the court's discretion to place less weight on § 5328(a)(4).

In terms of § 5328(a)(5), the court determined that the child has extended family available to him on both sides and considered this factor to be neutral. Father argues the Court ignored testimony from Father's relatives as to the closeness of their relationship. To the contrary, the trial court clearly considered testimony regarding both extended families. The trial court simply

did not find the paternal relationships were such that they should be afforded more weight than the maternal relationships.

In terms of § 5328(a)(6), the court considered the child's siblings. The trial court explicitly noted the child is the half-sibling to T., Mother's other child. In its findings, the court was silent to the fact that Father's wife was pregnant with a future half-sibling. The findings were also silent to the fact that during Mother's custodial time, the child would live with his step-siblings. It was within the trial court's discretion to find that the child's present relationship with his maternal older half-sibling was more meaningful to the child than the future relationship the child would have with his paternal unborn half-sibling.

In terms of § 5328(a)(7), which concerns the preference of the child, the court found his preference was to live with Mother but noted that he "feels equally good in both houses." The child was also agreeable to changing school districts to be with his step-siblings. Based on the child's testimony, the court's finding is not against the weight of the evidence or unreasonable, as Father proclaims.

In terms of § 5328(a)(8), which considers efforts by a parent to turn the child against the other parent, although there are no specific findings by the trial court as to this factor, we do not find that it affected the overall custody analysis. Moreover, Father did not identify specifically which statutory factors were not properly weighed by the trial court in his Pa.R.A.P. 1925(b)

statement. Thus, we cannot fault the trial court for failing to provide a more detailed analysis of this factor. *See* Trial Court Opinion, 10/13/17, at 4.

In terms of § 5328(a)(9)-(10), which consider the parenting and nurturing of the child, the court determined these factors favored Mother. In arguing that these findings are against the weight of the evidence, Father refers to the court's use of an anecdote to describe Father's controlling nature. The trial court noted that Father refused to let the child wear his hair a certain way. Had the trial court's findings on these factors been based on this incident alone, Father's contention might have merit. But the trial court merely used this instance as illustrative of Father imposing his personal preferences onto a child who, one might conclude, is old enough to make his own choices about such things. Similarly, the trial court did not find Mother to be better suited to maintain a nurturing relationship because Father is a tough sports dad. The trial court found Father's views and attitudes about sports to be worrisome. But the court was evidently not that concerned, as the child is to maintain his enrollment in sports in Father's geographic area if the child so desires. The court explicitly sought to preserve this aspect of their relationship.

The primary reasoning behind the trial court's finding that § 5328(a)(9)-(10) favored Mother was Father's decision to prevent the child from receiving proper medical attention. Indeed, § 5328(a) dictates that the court *shall* give weighted consideration to those factors that affect safety. The most recent round of litigation was precipitated by Father's refusal to vaccinate the child, despite the child experiencing a severe illness—an illness which Father sought

to hide from Mother.  In reaching its conclusion, the trial court also relied on the forensic psychologist's unequivocal recommendation that Mother is the better parent to meet the needs of the child.  When considering all of the evidence, it is somewhat disingenuous of Father to argue that the trial court found for Mother because Father insisted the child's hair be tidier.

We note Father does not take issue with the trial court's analysis as to § 5328(a)(3); (13); or (15), which were all found to be in favor of Mother.  Father does not contest the trial court additionally finding, pursuant to § 5328(a)(16), that Father's communication was inconsistent and thus should be counted against him. The trial court did not err or abuse its discretion on any of these factors.

In his second contention on appeal, Father submits that the trial court erred when fashioning an award that will cause Father to be without custody of the child for up to 12 days.  For support, Father cites *M.J.N. v. J.K.*, 169 A.3d 108 (Pa. Super. 2017), where we reversed a custody award that caused a father to be without custody for 10 days.  Father also cites *M.A.T. v. G.S.T.*, 989 A.2d 11 (Pa. Super. 2010), where we reversed the trial court for its unsubstantiated fear that commuting to school from two separate households would disrupt the child's stability.

Those cases are instantaneously distinguishable.  In *M.J.N.*, the parties lived approximately 20 minutes apart.  In *M.A.T.*, the parties lived even closer: five minutes apart.  In the present matter, where the parties reside 50 minutes apart from each other, the status quo would have caused Mother to

spend over three hours driving the child to and from school. This is of no consequence to Father, of course. But the status quo also would also cause the child to spend over 90 minutes commuting daily. The trial court found the schedule to be unsustainable *now*. The court also considered how the instability will only get worse as the child grows older, starts school earlier, and becomes more involved in the school community.

The trial court did not simply rely on the clock and the odometer. Here, common sense and the expert opinion aligned. Dr. Marlan, in her psychological evaluation, stated that the current arrangement is the least beneficial arrangement for the child. We have said before that a trial court is under no obligation to delegate its decision-making to expert testimony. *See* **M.A.T.,** 989 A.2d at 20. (citation omitted). "[W]hile a trial court is not required to accept the conclusions of an expert witness in a child custody case, it must consider them, and if the trial court chooses not to follow the expert's recommendations, its independent decision must be supported by competent evidence of record." **Id.** (citations omitted). Father's cited authority stands contradictory to his cause. The trial court wisely recognized that a shared custody award in this circumstance could not be supported by the evidence.

In his third contention, Father maintains that the trial court improperly considered evidence concerning a child not at issue in this case, namely the child's half-sibling, T., and that the court negatively considered the fact that T.'s relatives appeared in the courtroom on the final day of trial.

As for the allegation that the trial court's decision to interview the non-subject half-sibling was erroneous, we simply do not find that to be the case. The sibling is related to the child and resides with Mother. The sibling was also old enough to remember living with Father. This child's testimony relating to these individuals was relevant to the court's custody analysis. In any event, we believe the trial court when it stated that the sibling's testimony hardly factored into the custody decision.

Additionally, we find no abuse of discretion or error in the manner in which the trial court dealt with the appearance of T.'s relatives. Our review of the record reveals that these "visitors," as they were described by the trial court, were T.'s father and his parents (T.'s paternal grandparents). None of these visitors was related to the subject child. The visitors appeared on the last day of testimony, which the court specifically scheduled to conduct an in camera interview with T. Father submitted that T.'s father and paternal grandparents only appeared because they were concerned that a judge wanted to speak with T., who was ten years old at the time of the trial. The trial court did not find their "concern" about T. to be justified. Instead, as the court told them, it found their presence to be "damaging behavior" toward T. See Trial Court Opinion, 10/13/17, at 9. The trial court evidently believed Father coordinated the visitors' arrival; the trial court observed the tension between Mother and both T.'s father and her paternal grandparents. The trial court noted further that T.'s paternal grandparents had previously sought to

influence the psychological evaluator's recommendation, even though that recommendation concerned the subject child and not T. ***Id.***

Ultimately, the trial court determined that T.s relatives' appearance "was clearly a show of animosity toward Mother," and found their presence "disturbing." Trial Court Opinion, 10/13/17 at 3, footnote 1. However, in its subsequent opinion, it addressed Father's contention on appeal as follows:

> I spoke to the "Visitors" at the end of my interview of [T.] about what I found to be their damaging behavior with regard to [T.] but this had no bearing on my decision in this case. The presence of these non-parties did not factor into my decision nor did I assign any weight to anything they had to say to me. Although my conversation with them was transcribed, I did not consider it as evidence or testimony, unsworn or otherwise, nor did I use it in any way in my analysis or determination in this matter.

***Id.*** at 9.

Our review of the totality of the trial court's findings, when coupled with its analysis of all the statutory custody factors, supports the trial court's statement that it did not consider as evidence, or assign improper weight to, T.'s relatives' presence and/or discussion with the court.

In sum, the trial court's conclusions were reasonable, and it did not err in awarding primary physical custody of the child to Mother.

Order affirmed.

Judge Bowes joins in this Memorandum.

Judge Olson concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>3/1/2018</u>