J-S19016-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| J.P.D. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| D.J.S. | : | |
| | : | |
| Appellant | : | No. 2934 EDA 2019 |

Appeal from the Order Entered September 16, 2019
In the Court of Common Pleas of Northampton County Civil Division at
No(s):  C-48-CV-2014-762

BEFORE:  BOWES, J., McCAFFERY, J., and MUSMANNO, J.

MEMORANDUM BY McCAFFERY, J.:                    **FILED JUNE 03, 2020**

Appellant, D.J.S. (Father), appeals *pro se* from the order entered in the Northampton County Court of Common Pleas, which: found him in contempt of the parties' custody order; modified his physical custody of L.S. (Child); and ordered payment of J.P.D. (Mother)'s counsel fees.[1] We conclude Father has waived all his issues for a defective brief and thus affirm.

Father and Mother are parents to Child, born in June 2013. They married shortly after Child's birth, but separated approximately six months

---

[1] "Generally, an order finding a party in contempt is interlocutory and not appealable unless it imposes sanctions." **Rhoades v. Pryce**, 874 A.2d 148, 151 (Pa. Super. 2005) (*en banc*).  However, "the imposition of counsel fees can constitute a sanction." **Id.** at 152.  Thus, we determine the trial court's order was appealable and this this appeal is properly before us.

later in December 2013. The within divorce and custody matter commenced in January 2014, and a divorce decree was entered in June 2016. The trial court explained:

> The parties have filed numerous pleadings against each other[, including:] various Protection From Abuse (PFA) actions filed against each other and/or extended family members; and in criminal and civil complaints brought against each other before several different Magisterial District Judges.

Trial Ct. Op., 1/14/20, at 3.

The controlling custody order, entered May 26, 2015, generally granted the parties shared legal custody, Mother primary physical custody, and Father partial physical custody every other weekend. Custody exchanges were to be conducted at police stations. On November 1, 2018, the court ordered both parties to submit to psychological evaluations.

On August 20, 2018, January 16, and April 3, 2019, Mother filed petitions for contempt, alleging, *inter alia*, Father's willful failure to comply with the custody schedule. For example, Mother alleged that in March of 2019, Father refused to return Child because of "inclement weather" although there was no snow; when Mother arrived at Father's home, he was not there; Mother called the police to perform a welfare check and they discovered Father did not reside at that address; and the following day, Father sent Child to school with a fever and pharyngitis, confirmed by a pediatrician visit. Trial Ct. Op. at 24-25. On April 3, 2019, Mother also filed a petition for special relief, seeking Father's authorization for Child to see the school counselor and for

Father's consent to a passport for Child, so that Child could travel to Disney World. *Id.* at 25.

The trial court conducted a hearing on Mother's petitions on July 16, 2019. Father appeared *pro se* but did not present any evidence. Mother, represented by counsel, called psychologist Ronald Esteve, Ph.D., who had conducted the parties' court-ordered evaluations, to testify as an expert witness. The trial court credited Dr. Esteve's opinion that Father presented "with clear evidence of psychopathology," which

> is behavior that most reasonable, rational people would recognize as far and away outside of the normal boundaries of functioning. And it's also behavior that causes damage or pain . . . to the person himself, [Father], or it could cause damage or pain to other people[, for example, Mother, Child,] or other people.

*See* N.T., 7/16/19, at 25; Trial Ct. Op. at 41.[2] Dr. Esteve further opined that Father's contact with Child should be in "small doses," meaning "limited contact" that is "controlled" or "monitored." *Id.* at 26.

---

[2] The trial court also credited Dr. Esteve's report, which summarized Father

> sees Mother as evil, cruel, and criminal, and he is determined to punish her, even if he must hurt the Child in order to do so. . . . "Even when asked purposefully biased questions which encouraged [Father] to focus on the best needs of his daughter and the goal of a health relationship between the parents . . . he was having none of that. Rather his focus is solely on the criminal punishment of [M]other."

Trial Ct. Op. at 26. The court then explained it previously found Mother's numerous allegations of Father's misconduct to be "a 'he said – she said' dispute with no firm evidence to establish the weight of Mother's claims," and

The court also found, after reviewing Dr. Esteve's report: "Based on the various, conflicting representations by [Father], there is no clear picture as to where Child stays and who provides childcare while Child is supposed to be in [Father's] custody.[ ]"[3]  Trial Ct. Op. at 31.

> At the hearing,
>
> Mother recited a litany of troubling interactions with [Father] over the last several years.  [For example, she testified Father continued to videotape the custody exchanges, which the trial court had forbade.[4]]  Mother claims that Child is often distressed, dirty, [and] hungry [after visits with Father.]  Child provides

furthermore that Father was merely "a bit weird, but motivated in good faith to fulfill his parental duties."  Trial Ct. Op. at 40.  However, the court found:

> Dr. Esteve's report is replete with [Father's] written proclamations — many manifesto in nature — in which [Father's] very words support Mother's concerns.  Upon careful consideration of Dr. Esteve's evaluation and opinion, we now understand that his behavior is a function of an enduring and pervasive psychopathology and further, based upon his musings given to Dr. Esteve, his mental health condition is "far and away outside of normal human variance and his behavior has and will continue to cause damage and pain to others as well as himself."

*Id.* at 41.  The court acknowledged: "It can be argued that we erred in being too accommodating or indulgent with regard to [Father's] history of bad behavior."  *Id.* at 40-41.

[3] Nevertheless, the trial court stated Father often exercised his overnight visitation at the home of his girlfriend or wife, C.  *See* Trial Ct. Op. at 20 (referring to C. as Father's girlfriend); N.T., 7/16/19, at 68 (trial court referred to C. as Father's wife, and Father did not object).  Father and C. have a two children together, and C. also has another child.  *Id.* at 20-21.  However, Father generally did not live with C., and in any event, Father told Dr. Esteve he and C. separated in "early 2019."  *Id.* at 27-28.

[4] N.T., 7/16/19, at 39-40.  *See also* Order, 11/1/18, at ¶ 3 (forbidding videotaping custodial exchanges).

information to Mother that she often stays with various caretakers, including . . . Paternal Grandparents or [Father's] most recent girlfriend[.] Mother complained about [Father's] refusal to co-parent with [her], including his refusal to agree to allow Child to participate in [a]rt [t]herapy and violin lessons. Finally, Mother continued to complain about [Father's] refusal to communicate or provide important information to Mother, including identifying where he will be staying with Child during his visits.

Trial Ct. Op. at 36-37.

While Mother's petitions remained pending, she filed another petition for contempt on September 5, 2019. The court conducted a hearing on September 13th. Mother appeared with counsel, but Father failed to appear. N.T., 9/13/19, at 3. The trial court summarized the events underlying this petition for contempt:

. . . Mother related that on August 27, 2019, [Father] appeared at Child's school and demanded that school officials produce the Child. The school . . . called the police, who then informed [Father] he was not permitted back on school grounds. [T]wo days later, on August 29, 2019, [Father] failed to deliver Child to her elementary school. As a result the Principal, who . . . allegedly had a history of concerning incidents with [Father], contacted Mother to report this concern. Mother testified that [Father] would not answer her phone call, so she contacted the Lower Saucon Township Police Department. Officer Bredenner reported to the school and spoke with the Principal. Officer Bredenner was unable to make contact with [Father] by phone. Eventually[,] he obtained [Father's] girlfriend's email and sent a welfare check notice to [her] inquiring about Child. [Father] delivered Child to school after 11:00 a.m.

Trial Ct. Op. at 2.

By order entered September 16, 2019, the trial court found Father in willful contempt of the May 22, 2015, custody order, and modified Father's

physical custody of Child, granting him one four-hour session of supervised visitation every other weekend. The order also directed Father to pay Mother's counsel fees in the amount of $1,500 within 30 days.

Father filed a timely notice of appeal on October 10, 2019.[5] He did not contemporaneously file a concise statement of errors complained of on appeal, as required by Pa.R.A.P. 1925(a)(2)(i). As a result, the trial court directed Father to file a concise statement within 21 days. On November 21, 2019, this Court likewise entered an order directing Father to file a concise statement by December 2, 2019. Father filed a concise statement on December 2nd.[6] The trial court issued a 48-page opinion on January 14, 2020, thoroughly summarizing the procedural history of this case and setting forth its reasoning.

On appeal, Father raises the following issues for our review:

> The order being appealed, dated 13 September 2019, is one page in length and broken into three points of subject. All three items are being appealed. The first item states that [Father] is found in

---

[5] Father additionally filed a petition for modification and petition for contempt on October 10 and 11, 2019, respectively. The trial court dismissed both after Father failed to appear for a scheduled conference on these petitions. Order, 11/18/19. The court's order further stated Father "made no effort to see [ ] Child since entry of this court's order of September 16, 2019. . . ." **Id.**

[6] Because Father ultimately filed a Rule 1925(b) statement, within the deadline set by this Court's order, we decline to find he has waived his issues. **See In re K.T.E.L.**, 983 A.2d 745, 747 (Pa. Super. 2009) (failure to file Rule 1925(b) statement concurrently with children's fast track appeal is considered defective notice of appeal, to be disposed of on case-by-case basis, and will not result in dismissal or quashal where there was no prejudice to other parties). **Cf. J.M.R. v. J.M.**, 1 A.3d 902, 907 (Pa. Super. 2010) (failure to file Rule 1925(b) statement, when ordered by Superior Court, will result in waiver of all issues on appeal).

willful contempt without identifying the event the willful contempt occurred or citing any reason or evidence considered. The second item removes all unsupervised custodial rights of [Child] without justification of why this is in the best interest of the minor child. The third item requires [Father] to pay opposing counsel fees as a consequence of the alleged willful contempt at a level [Father] finds inappropriate. Further, the bias of the presiding Judge and its affect [sic] on the outcome is under protest.

Father's Brief at 1-2.

The argument section of Father's brief, spanning two pages, consists of three numbered paragraphs. Father's Brief at 3-4. The first paragraph alleges the trial judge's behavior was "unprofessional, hostile, dismissive, and in conflict with the standards of a member of the BAR." *Id.* at 3. Father avers, without any further explanation, the trial judge "made sweeping negative conclusions regarding the question of custody in prior events[,] surprised the Custody Master and invited himself off record into a mediation session in August 2018[,] consistently dismissed available evidence and directly influenced this specific docket for personal interests[.]" *Id.* In Father's second paragraph, he contends, again without further discussion, that Mother committed perjury and presented evidence "with willful intent made to mislead the court," and that Mother's counsel "failed to meet professional standards and acted inappropriately." *Id.* at 4. Father further asserts the trial court "failed to identify any specific evidence being found [sic] credible or relevant[.]" *Id.* Finally, Father's third paragraph states, in sum: "The hearing in July 2019 failed to identify its purpose, negating [Father's] ability to prepare

or present any evidence." *Id.* Father's brief does not cite any legal authority. We conclude all of Father's issues are waived.

Pennsylvania Rule of Appellate Procedure 2119(a) provides that the argument section of a brief "shall have at the head of each part — in distinctive type or in type distinctively displayed — the particular point treated therein, followed by such discussion and citation of authorities as are deemed pertinent." Pa.R.A.P. 2119(a). An appellant waives an issue on appeal if they fail to present it with citations to relevant authority or to develop the issue in a meaningful fashion capable of review. *Green Acres Rehab. & Nursing Ctr. v. Sullivan*, 113 A.3d 1261, 1267 n.4 (Pa. Super. 2015). The argument section shall specify the place in the record where an issue was raised before the trial court and therefore preserved for our review. Pa.R.A.P. 2119(e). Additionally, "[i]ssues not raised in the lower court are waived and cannot be raised for the first time on appeal." Pa.R.A.P. 302(a).

Here, Father's brief fails to identify any particular point of error or cite **any** legal principle. Instead, he refers ambiguously to the behavior of the trial judge and Mother's counsel, without citing any specific conduct nor explaining what professional rules they allegedly violated. Furthermore, in alleging Mother committed perjury and presented improper evidence, Father does not point to any particular testimony or evidence or explain why the court should not have admitted it. In addition, our review of the July 16, 2019, transcript reveals Father raised no objection to any of Mother's evidence, thus waiving

any evidentiary challenge for our review. *See* Pa.R.A.P. 302(a). We likewise conclude Father failed to raise any argument before the trial court that he was unaware of the issues to be litigated, or that he was unfairly precluded from presenting his own evidence. *See id.*

We note the trial court's discussion of Father's Rule 1925(b) statement:

> . . . Nowhere in his Statement did [Father] address the allegations that he failed to deliver the Child to school on September 5, 2019, as required by the Custody Order or that his failure to return Child to Mother has been a continuing, repeated issue over our many years of involvement with this case. However, [Father's] Statement does address his litany of historic complaints against Mother, the psychologist who performed court-ordered evaluations of the parties, and his various interactions with the Court during this custody dispute.

Trial Ct. Op. at 2. While the trial court was addressing Father's Rule 1925(b) statement, the court's observations are relevant to Father's brief as well. On appeal, Father has wholly failed to acknowledge Mother's allegations of his numerous violations of the court's orders and refusal to cooperate with her. Similarly, while averring the trial court "failed to identify any specific evidence being found credible or relevant," Father ignores the court's extensive review of Dr. Esteve's written report and testimony. *See* Father's Brief at 4; Trial Ct. Op. at 26-36.

Because Father has failed to develop any claim, discuss relevant authority, or show his claims are preserved for our review, we are constrained to conclude his issues are waived. Accordingly, we affirm the order of the trial court.

Order affirmed.

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*

*Date: 6/3/2020*