J-A10036-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| V.D.B. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| J.J.H. | No. 3854 EDA 2017 |

Appeal from the Order October 26, 2017
In the Court of Common Pleas of Philadelphia County
Family Court at No(s): 0C0712466

BEFORE:  GANTMAN, P.J., MCLAUGHLIN, J., and RANSOM, J.[*]

MEMORANDUM BY RANSOM, J.:                     **FILED JUNE 26, 2018**

V.D.B. ("Mother") appeals from the order entered in the Court of Common Pleas of Philadelphia County on October 26, 2017, which granted the petition for modification of the existing custody order and petition for special relief filed by J.J.H. ("Father") with respect to the parties' daughters, S.F.B., born in June 2006, and J.J.H.-.B., born in June 2007 (collectively, "the Children").  We affirm.

We adopt the following statement of facts from the trial court opinion and the record.  **See** Trial Court Opinion (TCO), 12/21/17, at 1-2.  The parties were very young when the Children were born; Father was fifteen years old, and Mother was eighteen years old at the time of Mother's first pregnancy.  **See** Notes of Testimony (N.T.), 10/25/17, at 6.  Father's mother assisted in taking care of the Children.  **Id.** at 9-10.  The relationship soured, and on July

_____

[*] Retired Senior Judge assigned to the Superior Court.

30, 2008, Mother filed a complaint seeking primary physical and legal custody of the Children. *See* Compl. for Custody, 7/30/08, at 1-3. Following a hearing before a custody master, the proposed order was approved in February 2009. In February 2010, the parties filed a stipulation and a final order was entered by agreement. Mother had primary custody of the Children.

In July 2016, both Mother and Father filed petitions seeking to modify the custody agreement and seeking contempt against the other. *See* Father's Pet. to Modify Custody, 6/1/16, at 1-3; Father's Pet. for Contempt, 6/1/16, at 1-2. In his petitions, Father stated that Mother was not complying with the custody order and that the current order was not working for them, and requested longer weekend visits. *Id.* In response, Mother requested sole physical and legal custody, claiming that Father was physically and mentally abusive to the Children; that he was not compliant with the order and was late or did not come to visitations; and that he had moved without notification. *See* Mother's Pet. to Modify Custody, 6/11/16, at 1-3; Mother's Pet. for Contempt, 6/11/16, at 1-2.

In July 2016, Father filed an emergency petition for visitation. *See* Pet. for Visitation, 7/11/16, at 1-5. In the petition, he requested visitation on July 17, 2016, so the Children could attend and participate in his wedding. *Id.* Father averred that Mother was non-responsive or non-committal in response to his requests. *Id.* On July 15, 2016, following a hearing, the custody master ordered that the girls attend the wedding.

On August 22, 2016, Father filed a petition for contempt, averring that on August 8, 2016, Mother's counsel sent Father a letter stating she was offended with Father's behavior at a support conference. *See* Pet. for Contempt, 8/22/16, at 3. In subsequent phone conversations between counsel, Mother's counsel represented that Mother did not feel comfortable with Father taking the daughters to an "unknown address" during his visitation, and she requested that he reduce his visitation. *Id.* at 4. Counsel represented that the Children were "terrified" of their father and that she was advising Mother not to attend the scheduled August 13, 2016 visitation. *Id.* Mother did not bring the Children to the August 13, 2016 visitation. *Id.*

Mother filed a response to Father's petition, averring that the Children were afraid of Father and did not wish to go to his home. *See* Ans. and Counterclaim, 9/6/16, at 2. Further, Mother's counterclaim averred 1) Father was "barely around as a parent;" 2) the custody order was never followed; 3) in 2014, DHS became involved with the family and found an indicated report of child abuse; and 4) a number of other allegations about Father's conduct. *Id.* at 2-3.

On September 13, 2016, a temporary agreement was entered on the record. Mother filed a motion seeking mental health exams but later voluntarily withdrew the motion. In January 2017, Mother sought a protracted hearing. On October 25, 2017, the court convened for a custody hearing. At the hearing, Father and Mother testified. Additionally, the following witnesses testified: Shannon Oliver O'Neal, a child therapist; R.K., Mother's employer;

D.A., Mother's boyfriend; and G.H., Father's wife. The hearing produced often contradictory testimony.

Father, a car salesman, testified that he has a good relationship with the Children, wished to be a more active parent, and that the Children want to spend more time with him. *Id.* at 50-53, 85-86. He denied any accusations of abusive behavior, drug or alcohol abuse, or inappropriate behavior by his mother ("Grandmother") and grandmother ("Great-Grandmother"). *Id.* at 37-42, 54, 72-75, 89-92. Father attempted to co-parent the Children, but Mother would not cooperate. *Id.* at 28-35. At times, Mother's phone was disconnected or she had changed numbers, although Father makes an effort to call the Children three times a week. *Id.* at 52-53, 77-80. Until Father's engagement, custody exchanges had been managed without issue. *Id.* at 9-12. Father married his wife in July 2017, and after an emergency custody hearing, the Children attended the wedding and enjoyed themselves. *Id.* at 12, 15-18. After the wedding, Mother stopped bringing the Children to custody exchanges at the 17th Police District in Philadelphia, Pennsylvania. *Id.* at 19.

G.H., Father's Wife and the Children's Stepmother, is an inpatient physical therapist at a rehab hospital. *Id.* at 110-11. She has known the Children since they were six months and one year old. *Id.* She has a good relationship and bond with the Children, and she would like to spend more time with them. *Id.* at 111-112. G.H. denied that Father had ever been

abusive or violent to her or the Children and also denied inappropriate behavior by Father's family. *Id.* at 113-115.

Mother's testimony painted a different picture of the relationship. She claimed that Father was not regularly involved with the Children and rarely complied with custody orders. *Id.* at 123-24, 127-28, 145-57. She stopped bringing the Children to custody exchanges after "the third or fourth visit" that Father missed, and that during the time she had a Protection From Abuse Order ("PFA"), *see* 23 Pa.C.S. § 6101, *et seq.*, Father did not contact the Children. *Id.* at 129. Mother testified that Father was aggressive, abusive, and rude, and that he called the Children names, including "the n-word." *Id.* at 131-34.

Mother testified regarding other alleged incidents, including: Father punched the Children in their chests; Father hit the Children with shoes while they were naked; Father had attempted to force his way into her house in 2015; Father followed her car attempting to record her license plate; Father took the Children to a beer festival and allegedly drove while under the influence. *Id.* at 131-34, 137, 164-65, 194-95, 208-09. Mother admitted that she did not report many of the incidents to the police, DHS, or the custody master. *Id.* at 212. Mother also testified regarding inappropriate behavior by Father's family. She claimed that the Children's Grandmother would take off her clothes and force the Children to put lotion on her back. *Id.* at 133. Mother described numerous incidents of mutually abusive, violent behavior during her relationship with Father. *Id.* at 164-69,

The Children's therapist, Shannon Oliver O'Neal, testified that she is a licensed social worker who began treating the Children in July 2016. *Id.* at 220-222, 227. She diagnosed both Children with post-traumatic stress disorder ("PTSD"). *Id.* at 228-229. The Children felt anxious and embarrassed about conflict at the custody exchanges. *Id.* at 232. In September 2016, Ms. O'Neal called the Department of Human Services ("DHS") after J.J.H-B. reported that her paternal great grandmother placed a nipple on J.J.H-B.'s lip. *Id.* at 223. DHS found this report unfounded. *Id.* In the six months prior to the hearing, the Children did not report any specific incidents with Father. *Id.* at 237. Ms. O'Neal stated the Children's preference was not to see their Father overnight. *Id.* at 238.

Additionally, R.K., Mother's employer and a family friend, testified that he has known Mother and the Children since 2013, and that he was concerned about Father's behavior. *Id.* at 248-55. D.A., Mother's boyfriend, testified that he has known Mother and the Children for four years. *Id.* at 256. He stated that the Children are sometimes sad and that they spoke to him on two occasions about Father drinking alcohol. *Id.* at 257-59.

Two petitions seeking PFAs were filed against Father. *Id.* at 42-44. Father testified that he did not receive notice of the first petition, filed in 2014 after Mother made a report to DHS, in time to challenge it. *Id.* at 42-43. The report alleged that father had lifted S.F.B. by the neck. *Id.* at 239. Father testified that at the time of the report and petition, he was living at several different addresses, and did not receive any notice in the mail. *Id.* No

witnesses were interviewed, no home visits conducted, and no evaluations performed. *Id.* at 43-49. The order expired sometime in 2016. *Id.* at 262-72. Mother sought the second PFA after she alleged that Father had harassed her by following her in his car and posting a threatening Facebook message; Father denied following Mother in his car, but admitted to posting on Facebook, "2016 has taken a lot of people, maybe it should take my baby mom." *Id.* at 44-45. Father explained that he wanted Mother out of his life and admitted he should not have posted the message. *Id.* at 46-48. The petition seeking a PFA was later withdrawn. *Id.* at 46-48.

The court spoke to both Children *in camera.* J.J.H-B. expressed that her preference was not to stay overnight with Father. N.T., In Camera, 10/25/17, at 9, 20. S.F.B. did not specifically express a preference but did state she felt uncomfortable being forced to choose between Mother and Father and also that although she loves her Father, he has occasionally embarrassed her. N.T., In Camera, 10/25/17, at 17. At the conclusion of the hearing, the court made its findings pursuant to 23 Pa.C.S. § 5328(a) on the record. *Id.* at 262-76. Essentially, the court pointed to behaviors by both parents that were inappropriate, including attempting to influence the Children as to their testimony, and cautioned the parents to modify their behavior around the Children. *Id.* Ultimately, the court found the Children's best interests would be served by increased custody with Father. *Id.*

On October 26, 2017, the court entered a final order, finding Mother in civil contempt but imposing no sanctions. *See* Order, 10/26/17, at 1-3. The

court ordered Mother and Father to share legal custody, with Mother retaining primary physical custody. *Id.* The order granted Father partial physical custody every other weekend from 7:00 p.m. Friday until Sunday at 6:00 p.m. *Id.* The order outlined a holiday schedule. *Id.* Mother filed a petition for reconsideration, although the court did not rule on the petition.

Mother timely filed a notice of appeal and a concise statement of errors complained of on appeal. The trial court filed its Rule 1925(a) opinion on December 21, 2017.

On appeal, Mother raises the following issues for our review:

1. Whether the trial court erred and abused its discretion in failing to adequately consider and give appropriate weight to the child custody factors [of] 23 Pa.C.S. § 5328(a) when it granted [Father's] petition for modification of custody with regard to the parties' minor children.

2. Whether the trial court erred in failing to consider and give appropriate weight to Appellee's "indicated" child abuse history against him in 2014 with regard to the minor child [S.F.B.] and in not ordering an evaluation to determine the risk of harm to the children.

3. Whether the trial court erred in failing to consider and give appropriate weight to the testimony of the children['s] treating therapist where there was adequate evidence that Appellee is an indicated child abuser with respect to one of the children at issue, and they are both embarrassed and traumatized by their father and his actions.

*See* Mother's Brief at 7-8 (unnecessary capitalization and answers omitted).

With regard to the modification of custody orders, our standard of review is well-settled.

In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

*V.B. v. J.E.B.*, 55 A.3d 1193, 1197 (Pa. Super. 2012) (internal citations omitted).

The Child Custody Act (the Custody Act), 23 Pa.C.S. §§ 5321-5340, governs all custody proceedings commenced after January 24, 2011. *See C.R.F. v. S.E.F.*, 45 A.3d 441, 443 (Pa. Super. 2012). "The primary concern in any custody case is the best interests of the child." *See J.M.R. v. J.M.*, 1 A.3d 902, 911 (Pa. Super 2010). "The best-interests standard, decided on a case-by-case basis, considers all factors that legitimately have an effect upon the child's physical, intellectual, moral and spiritual wellbeing." *Id.*

The Custody Act, 23 Pa.C.S. § 5328(a), requires that the trial court analyze the various factors prescribed by the legislature:

In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(2.1) The information set forth in section 5329.1(a) (relating to consideration of child abuse and involvement with protective services).

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by

another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S. § 5328(a).

The Custody Act further provides that a trial court "shall delineate the reasons for its decision on the record in open court or in a written opinion or order." 23 Pa.C.S. § 5323(d). There is "no required amount of detail for the trial court's explanation; all that is required is that the enumerated factors are considered and that the custody decision is based on those considerations." *M.J.M. v. M.L.G.*, 63 A.3d 331, 336 (Pa. Super. 2013). A court's explanation of reasons for its decision, which adequately addresses the relevant factors, complies with Section 5323(d). *A.V. v. S.T.*, 87 A.3d 818, 823 (Pa. Super. 2014).

While the trial court must consider all of the factors outlined in Section 5328(a) and give weighted consideration to those factors which affect the safety of the child, we have acknowledged that the amount of weight a court gives any one factor is almost entirely discretionary. *See M.J.M. v. M.L.G.*, 63 A.3d 331, 339 (Pa. Super. 2013). It is "within the trial court's purview as the finder of fact to determine which factors are most salient and critical in each case." *Id.* The primary caretaker doctrine is no longer viable, but one

parent's status as the primary caretaker may be considered when engaging in the statutory inquiry. ***Id.***

With these considerations in mind, we turn to Mother's first issue. Essentially, Mother argues that the trial court erred in finding some factors in favor of Father, or not placing sufficient weight on other factors. ***See*** Appellant's Brief at 17-44. However, the trial court considered each factor and placed its reasoning on the record in open court. ***See*** N.T., 10/25/17, at 262-76. With the exception of Mother's argument concerning 23 Pa.C.S. § 5328(a)(2.1), she recognizes that the court's decision was supported by the reasonable evidence of the record. ***See*** Appellant's Brief at 17-44. Nevertheless, she avers that the factors were improperly found to either be neutral or in favor of Father, or that in cases of conflicting testimony, credibility determinations were improperly made in favor of Father. ***See*** Appellant's Brief at 17-44. Despite Mother's arguments, we accept the findings of the trial court that are supported by competent evidence and defer issues of credibility and weight of the evidence to the trial court. ***See V.B.***, 55 A.3d 1197. Accordingly, we accept the trial court's findings and decline to find an abuse of discretion.

Next, Mother contends that the trial court abused its discretion in failing to consider and give appropriate weight to Father's "indicated" child abuse history and to have him properly evaluated. ***See*** Appellant's Brief at 45. Mother argues that because Father had an indicated incident of child abuse and because he did not appeal the determination, the court was required to

weigh this factor more heavily and to order a mental health evaluation or a risk assessment. *Id.*

Section 5328(a)(2.1) provides that the court shall consider "[t]he information set forth in section 5329.1(a) (relating to consideration of child abuse and involvement with protective services)." 23 Pa.C.S. § 5329.1 provides that where a party seeks custody, the court shall determine whether 1) the child is subject of an indicated report of child abuse; 2) whether a party or a member of the party's household has been identified as the perpetrator in an indicated report of child abuse; 3) the date and circumstances of the abuse; 4) the jurisdiction in which the investigation took place. *Id.*

Initially, we note that Mother has waived the issue insofar as it refers to mental health evaluations. *See In re R.P.*, 957 A.2d 1205, 1222 (Pa. Super. 2008); *see also* Pa.R.A.P. 302(a) (issues not raised in the lower court are waived and cannot be considered for the first time on appeal). Although a petition seeking such evaluations was filed, Mother later voluntarily withdrew it. Further, insofar as the record shows, Mother never requested a risk evaluation at the custody trial.[1] Accordingly, Mother has waived this issue for purposes of appeal. *Id.* at 1222.

_____

[1] We note that Pa.R.C.P. 1915.3-2 provides that petitions for custody modification must include verifications regarding abuse history. *See* Pa.R.C.P. 195.3-2(a). Further, after initial in-person contact, the judge performs an initial evaluation to determine whether the existence of abuse history poses a threat to the child and whether counseling is necessary. *Id.* at (b). The court may order further evaluation where necessary, and while the court *shall* consider this evidence, it is not required to order further evaluation.

Further, the court considered the indicated report. *See* N.T., 10/25/17, at 262-72. However, it found that 1) further counseling was not required because the Children were already in therapy; and 2) that Father did not pose a danger to the Children, and they were not unsafe in either household. *See* TCO at 5; N.T., 10/25/17, at 262-72. This is well within the court's purview both as a factfinder assessing the credibility of witnesses, and as an evaluator of whether a further independent investigation or risk assessment is required. *See*, *e.g.*, Pa.R.C.P. 1915.3-2(b) (noting that the court shall consider evidence of abuse history and may order further evaluation where necessary). As we have noted above, we accept the findings of the trial court that are supported by competent evidence and defer issues of credibility and weight of the evidence to the trial court. *See V.B.*, 55 A.3d 1197. Accordingly, we decline to find an abuse of discretion.

Finally, Mother argues that the trial court erred when it failed to properly consider and give appropriate weight to the testimony of the Children's treating therapist. *See* Appellant's Brief at 50. Mother contends that the court ignored the uncontradicted testimony of Shannon Oliver O'Neal in contravention of established case law. *Id.*

The trial court is under no obligation to delegate decision-making authority to an expert witness, though it is an abuse of discretion for a trial court to dismiss as unpersuasive or totally discount uncontradicted expert testimony. *See M.A.T. v. G.S.T.*, 989 A.2d 11, 19-20 (Pa. Super. 2010) (*en banc*). A trial court is not required to accept the conclusions of the expert

witness, but must consider them, and if it chooses not to follow the recommendations, the decision must be supported by competent evidence of the record. *Id.*

Here, while the trial court opinion does not refer to the evidence, the record speaks for itself. Ms. Oliver O'Neal is a licensed social worker who has been treating the Children for PTSD and anxiety. *See* N.T., 10/25/17, at 218-220. Ms. Oliver O'Neal testified that the Children had expressed to her that they would like the visitation arrangement to stay the same, and that it was her opinion the court should respect the preferences of the Children. *See* N.T., 10/25/17, at 237-38. However, the *in camera* hearings reflected mixed preferences by the Children, and the court considered but expressed concern with the information the expert had been given, specifically noting that Mother had consistently attempted to alienate the Children from Father. *See* N.T., 10/25/17, at 264-65. Accordingly, 1) the testimony was not entirely uncontradicted; 2) the court did consider but chose not to follow the recommendations, and the decision was supported by competent evidence of the record. *See M.A.T.*, 989 A.2d at 19-20. Accordingly, we decline to find an abuse of discretion in the court's ruling. *Id.*; *see also V.B.*, 55 A.3d 1197.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>6/26/18</u>