J-S20001-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN RE: E.H., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: T.H., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 144 MDA 2024 |

Appeal from the Order Entered December 29, 2023
In the Court of Common Pleas of Bradford County Orphans' Court at
No(s):  10 ADOPT 2023

BEFORE:   OLSON, J., KUNSELMAN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY OLSON, J.:                    **FILED: AUGUST 20, 2024**

T.H. ("Father") appeals from the December 29, 2023 order involuntarily terminating his parental rights to his son, E.H. ("Child"), born in January 2020.[1]  In addition, Father's appointed counsel ("Father's Counsel") has filed a petition to withdraw and an accompanying brief, pursuant to ***Anders v. California***, 386 U.S. 738 (1967), and ***Commonwealth v. Santiago***, 978 A.2d 349 (Pa. 2009).  We conclude that Father's counsel has complied with the procedural requirements necessary to withdraw.  Moreover, after independently reviewing the record, we conclude that the appeal is wholly

_____

[*] Former Justice specially assigned to the Superior Court.

[1] Pursuant to a July 21, 2023 decree, the orphans' court confirmed the consent to adoption executed by Child's Mother, A.J.H. ("Mother") (collectively with Father, "Parents"), and terminated her parental rights to Child.  Mother did not appeal and did not participate in the instant appeal.

frivolous. We, therefore, grant counsel's petition to withdraw and affirm the judgment of sentence.

We gather the following relevant factual and procedural history from the certified record, which the orphans' court has aptly summarized:

> . . . [Child] was adjudicated a dependent child by order dated February 11, 2021, after [Parents] executed a request for voluntary placement on January 13, 2021.[2] [Child] was placed in the kinship foster home of [Maternal Grandparents] by order dated February 11, 2021. [Child] has remained in Maternal Grandparents' care since the initial placement. During the [28] months that preceded the filing of [the] petition [for involuntary termination of parental rights], at least seven [permanency] review hearings were held, at which [Father] was, in all hearings but two [], found to have made "no" or "minimal" progress in alleviating the circumstances that necessitated the original placement, which, according to the facts stipulated to by [Parents] at the adjudication hearing on February 11, 2021, included an unwillingness or inability to "properly care for [their] one[-]year[-]old child." At the time of the adjudication, [Parents'] apartment "had no heat" and was "in deplorable condition." . . .
>
> Although regular, supervised visits were established throughout the first year of [C]hild's placement, [Father]'s participation was inconsistent, going months (from August 2021 to March 2022) without exercising any of his weekly supervised visits. At the visits [Father] attended before he stopped going, he would not appropriately interact with [C]hild, would not change [C]hild's diaper without prompting, and would not feed [C]hild without a schedule and reminders.

---

[2] The court established an initial permanency goal of return to parent or guardian and a concurrent goal of adoption. **See** Exhibit 1, Recommendation for Adjudication, 2/11/21 & Recommendation for Permanency Review, 7/15/21. Bradford County Children and Youth Services Agency ("the Agency") introduced as Exhibit 1 documents from the dependency proceedings, which included a goal change petition filed on May 16, 2023. However, Exhibit 1 is not all-inclusive, and it does not include an order ruling upon the goal change petition.

[Parents] "continued to have a tumultuous relationship . . . [that] has drawn police response" and eventually ended with a permanent separation in early 2023.

Throughout the dependency, [Father] received intellectual disability services, mental health therapy, multiple parent education and parent-coaching services, and supervised visitation services. [. . .] The testimony of [Father]'s visitation supervisors and parenting coaches [. . .] established that although he eventually could provide for [Child]'s basic needs if he was given a specific schedule to follow and prompted to change or feed [Child], he was never able to demonstrate that he could focus or remain engaged in parenting [Child] for more than [one to one and-a-half] hours. In fact, [Father] regularly ended visits early. Attempts to extend visits beyond four [] hours were unsuccessful, so they eventually were reduced to two [] hours.

After [13] months, the Hearing Officer found "minimal progress," in that [Father] "has not been regularly visiting [C]hild, has only recently gotten adequate housing, . . . has serious relationship issues with [Mother] . . . has budgeting problems and has yet to demonstrate competency in parenting."

After [17] months of the dependency, [the Agency] had initiated a bonding and parental competency evaluation in anticipation of the termination of [Father]'s parental rights because he had not demonstrated he could "overcome his mental health and [intellectual disability ("ID")] issues to become a competent custodian to a child." Moreover, neither parent was "ready for unsupervised visitation" and reunification was found to "may not be feasible."

Orphans' Court Opinion, 3/5/24, at 2-4 (cleaned up) (citations to record omitted); *see also* Exhibit 1.

Melissa DeVincentis, Ph.D. ("Dr. DeVincentis"), a licensed marriage and family therapist and behavior specialist and board-certified behavior analyst, conducted the above-described parenting capacity/bonding evaluation from June through December 2022. Her report, admitted without objection as

Exhibit 2, is dated December 12, 2022. *See* N.T., 12/18/23, at 116. Dr. DeVincentis described Father's parenting skills, as follows.

> Throughout the record review, observations, and service provider interviews, it has been noted that [Father] will only do undesirable parenting tasks when prompted or wait for [Mother] to complete. Some examples of this are: waiting to change diaper, not complet[ing] household chores, not putting [Child] down for a nap, end[ing] the visit rather than dealing with the behaviors of a child.

Exhibit 2 at 15. She noted that Father scored in the high-risk category for low-level empathy. *See id.* at 8, 10. Moreover, while Child displayed "secure attachment indicators" toward Father, she observed "insecure attachment indicators of [a] preoccupied or dismissive parent[]" by Father toward Child. *Id.* at 12. Conversely, she observed reciprocated "secure attachment indicators" between Maternal Grandmother and Child. *Id.* at 13. Moreover, Dr. DeVincentis recognized that Father struggled with the following factors which would impede satisfying Child's permanency goal: housing instability, mental health instability, financial instability, relationship instability, and inconsistent visitation. *See id.* at 13-17. As a result, Dr. DeVincentis recommended termination of Father's parental rights. *Id.* at 17 ("Given the information contained in this report, the evaluator believes that the court should consider termination of parental rights with a post adoption agreement where [Child] could have contact or communication with [Parents]. This consideration would in the best interest of [Child] from a physical and emotional standpoint"); *see also* N.T., 12/18/23, at 126.

On June 12, 2023, the Agency filed a petition for the involuntary termination of Father's parental rights. At that time, Child was three-and-a-half years old. On July 21, 2023, the orphans' court appointed Child's guardian *ad litem* in the dependency proceedings, Fred Smith, Esquire, as her "legal counsel" on the adoption docket.[3] *See* Order, 7/21/23.

The orphans' court held a hearing on the petition on December 18, 2023, during which Attorney Smith represented the legal interests of Child, then nearly four years old. The Agency presented the testimony of Courtney Egnatzky, a support coordinator with Intellectual Disabilities through Bradford County Human Services; Ashley Hollenbeck, a direct support professional with Futures Community Support Services; Amanda Collins, a behavior health site director for Merakey, who provided supervised visitation and parent coaching services to Father from February to April 2021 and June to September 2021; Valerie Weirback and Rebecca Coates, community-based caseworkers with Concern Professional Services, who have supervised Father's visitation with Child since March 2022; Ashley Schmidt, a Parents as Teachers educator with

---

[3] Our Supreme Court has mandated that this Court conduct *sua sponte* review to ensure that trial courts have properly appointed counsel to represent the legal interests of children in contested involuntary termination proceedings in conformity with 23 Pa.C.S.A. § 2313(a). *See In re Adoption of K.M.G.*, 240 A.3d 1218, 1234-36 (Pa. 2020). Here, the July 12, 2023 order of appointment clearly appointed Attorney Smith as legal counsel for Child. Further, there is no indication in the notes of testimony that Attorney Smith was representing Child's dual interests. Therefore, we conclude that the court complied with Section 2313(a).

Penn York Opportunities; Megan Snyder, a homemaker coordinator with Penn York Opportunities; Ginny Dickerson, a family services supervisor with Penn York Opportunities; and Dr. DeVincentis, who was accepted as an expert in the field of parental competency and parent-child bonding. Additionally, Father who was present and represented by counsel, testified on his own behalf.

By order dated December 27, 2023, and entered December 29, 2023, the orphans' court involuntarily terminated Father's parental rights to Child pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and (b). On January 29, 2024, Father, through his counsel, filed a timely notice of appeal.[4] The orphans' court filed a responsive Rule 1925(a) opinion on March 5, 2024.

_____

[4] Father failed to file a contemporaneous concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). **See** Pa.R.A.P. 1925(a)(2)(i) (In a children's fast track appeal, "[t]he concise statement of errors complained of on appeal shall be filed and served with the notice of appeal."). On January 31, 2024, this Court directed Father's Counsel to file a Rule 1925(b) statement no later than February 18, 2024, and she timely complied. **See** Order, 1/31/24; **see also** Pa.R.A.P. 107 (incorporating by reference the rules of construction set forth in the Pennsylvania Rules of Judicial Administration, including Pa.R.J.A. 107(a)-(b) relating to the computation of time and setting forth a rule of construction that excludes the last day of any period that falls upon a Saturday, Sunday, or legal holiday). While the certificate of service filed by Father's Counsel included service on the orphans' court judge, the orphans' court judge revealed that he did not directly receive a copy. **See** Orphans' Court Opinion, 3/5/23, at 1 n.1. Notwithstanding, he noted reviewing the copy contained in the record. **See id.** Because Father's misstep was not prejudicial to any of the parties and did not impede the orphans' court's ability to issue a thorough opinion, the procedural error was harmless. Therefore, we do not dismiss it. **See In re K.T.E.L.**, 983 A.2d 745 (Pa. Super. 2009) (failure to file a 1925(b) statement
*(Footnote Continued Next Page)*

Thereafter, on April 17, 2024, Father's Counsel filed a petition to withdraw, as well as an **Anders** brief. When counsel seeks to withdraw pursuant to **Anders** and its progeny,[5] this Court may not review the merits of the appeal without first addressing counsel's request to withdraw. **See In re Adoption of M.C.F.**, 230 A.3d 1217, 1219 (Pa. Super. 2020) (quoting **Commonwealth v. Daniels**, 999 A.2d 590, 593 (Pa. Super. 2010)) ("When presented with an **Anders** brief, this Court may not review the merits of the underlying issues without first passing on the request to withdraw.") (cleaned up).

To procedurally withdraw, counsel must:

1) petition the court for leave to withdraw stating that, after making a conscientious examination of the record, counsel has determined that the appeal would be frivolous; 2) furnish a copy of the [**Anders**] brief to the [appellant]; and 3) advise the [appellant] that he or she has the right to retain private counsel or raise additional arguments that the [appellant] deems worthy of the court's attention.

**Commonwealth v. Cartrette**, 83 A.3d 1030, 1032 (Pa. Super. 2013) (*en banc*) (citation omitted). Counsel must also "attach to their petition to

_____

concomitantly with a children's fast track appeal is considered a defective notice of appeal and will not be dismissed since failure to file the statement is a violation of a procedural rule and not an order of court). **Cf. Mudge v. Mudge**, 6 A.3d 1031 (Pa. Super. 2011) and **J.M.R. v. J.M.**, 1 A.3d 902 (Pa. Super. 2010) (failure to file a Rule 1925(b) statement, when ordered by the Superior Court, will result in a waiver of all issues on appeal).

[5] This Court extended the **Anders** procedure to appeals from decrees terminating parental rights involuntarily in **In re V.E.**, 611 A.2d 1267, 1275 (Pa. Super. 1992).

withdraw a copy of the letter sent to their client advising him or her of their rights." *Commonwealth v. Millisock*, 873 A.2d 748, 752 (Pa. Super. 2005).

Additionally, our Supreme Court has set forth the following requirements for *Anders* briefs:

> [W]e hold that in the *Anders* brief that accompanies court-appointed counsel's petition to withdraw, counsel must: (1) provide a summary of the procedural history and facts, with citations to the record; (2) refer to anything in the record that counsel believes arguably supports the appeal; (3) set forth counsel's conclusion that the appeal is frivolous; and (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

*Santiago*, 978 A.2d at 361.

In the case at bar, counsel substantially complied with all of the above procedural obligations. We must, therefore, review the entire record and analyze whether this appeal is, in fact, wholly frivolous. Our analysis begins with the claims raised in the *Anders* brief:

> 1. Did the trial court err as a matter of law in involuntarily terminating [Father's] parental rights?
>
> 2. Did the trial court err as a matter of law in concluding [Father] evidenced a settled purpose of relinquishing his parental claim to the child for a period of at least 6 months following the filing of the Petition to Terminate Parental Rights under 23 [Pa.C.S.] § 2511(a)(1)?
>
> 3. Did the trial court err in concluding [Father's] repeated and continued incapacity, neglect, or refusal has caused the child to be without essential parental care, control, or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect, or refusal cannot be remedied under 23 Pa.C.S. § 2511(a)(2)?

4. Did the trial court err as a matter of law in concluding [Father] cannot remedy the condition which led to the child's removal within a reasonable time under 23 Pa.C.S. § 2511(a)(5)?

5. Did the [trial court] err as a matter of law in terminating [Father's] parental rights under 23 Pa.C.S. § 2511(a)(8)?

Father's Brief at 7-8 (some capitalization omitted).

We review involuntary termination orders for an abuse of discretion which our Supreme Court has explained "is limited to a determination of whether the decree of the termination court is supported by competent evidence." *In re Adoption of C.M.*, 255 A.3d 343, 358 (Pa. 2021). When applying this standard, appellate courts must accept the trial court's findings of fact and credibility determinations if they are supported by the record. *Interest of S.K.L.R.*, 256 A.3d 1108, 1123 (Pa. 2021). "Where the trial court's factual findings are supported by the evidence, an appellate court may not disturb the trial court's ruling unless it has discerned an error of law or abuse of discretion." *In re Adoption of L.A.K*, 265 A.3d 580, 591 (Pa. 2021). An appellate court may reverse for an abuse of discretion "only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will." *Id*.

Termination of parental rights is governed by Section 2511 of the Adoption Act. If the trial court determines the petitioner established grounds for termination under subsection 2511(a) by clear and convincing evidence, then the court must assess the petition under subsection 2511(b), which

focuses on the child's needs and welfare. *In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013).

In this case, the trial court terminated Father's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and (b). We have long held that, in order to affirm a decree terminating parental rights, we need only agree with the trial court as to any one subsection of Section 2511(a), as well as Section 2511(b). *See In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004). As such, we analyze the trial court's termination order pursuant to Section 2511(a)(2) and (b), which provide as follows:

> **(a) General Rule**.—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> . . .
>
> > (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.
>
> . . .
>
> **(b) Other considerations**.—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein

> which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(2), (b).

With regard to termination of parental rights pursuant to Section 2511(a)(2), we have indicated:

> In order to terminate parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(2), the following three elements must be met (1) repeated and continued incapacity, abuse, neglect or refusal; (2) such incapacity, abuse, neglect or refusal has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied.

*In re Adoption of M.E.P.*, 825 A.2d 1266, 1272 (Pa. Super. 2003) (citation omitted). "The grounds for termination due to parental incapacity that cannot be remedied are not limited to affirmative misconduct. To the contrary, those grounds may include acts of refusal as well as incapacity to perform parental duties." *In re S.C.*, 247 A.3d 1097, 1104 (Pa. Super. 2021), *quoting In re Adoption of C.D.R.*, 111 A.3d 1212, 1216 (Pa. Super. 2015) (internal citation omitted). "Parents are required to make diligent efforts towards the reasonably prompt assumption of full parental responsibilities." *Matter of Adoption of M.A.B.*, 166 A.3d 434, 443 (Pa. Super. 2017), *quoting In re N.A.M.*, 33 A.3d 95, 100 (Pa. Super. 2011). As such, "[a] parent's vow to cooperate, after a long period of uncooperativeness regarding the necessity or availability of services, may properly be rejected as untimely or disingenuous." *In re S.C.*, 247 A.3d at 1105, *quoting In re Z.P.*, 994 A.2d 1108, 1118 (Pa. Super. 2010).

With respect to Section 2511(b), this Court has stated that the trial court "must . . . discern the nature and status of the parent-child bond, with utmost attention to the effect on the child of permanently severing that bond." *In re C.M.S.*, 884 A.2d 1284, 1287 (Pa. Super. 2005) (citation omitted). Further,

> [I]n addition to a bond examination, the trial court can equally emphasize the safety needs of the child, and should also consider the intangibles, such as the love, comfort, security, and stability the child might have with the foster parent.

*In re A.S.*, 11 A.3d 473, 483 (Pa. Super. 2010). Our Supreme Court explained, "[c]ommon sense dictates that courts considering termination must also consider whether the [child is] in a pre-adoptive home and whether [the child has] a bond with their foster parents." *In re T.S.M.*, 71 A.3d at 268. The Court directed that, in weighing the bond considerations pursuant to Section 2511(b), "courts must keep the ticking clock of childhood ever in mind." *Id.* at 269. The *T.S.M.* Court observed, "[c]hildren are young for a scant number of years, and we have an obligation to see to their healthy development quickly. When courts fail . . . the result, all too often, is catastrophically maladjusted children." *Id.*

The trial court explained the factual basis for its finding of termination under Section 2511(a)(2) and (b):

> The evidence presented included, but was not limited to, the following: (i) [Father] has been unable to adequately care for the child in an unsupervised setting since the child was voluntarily placed with CYS by the biological parents in January 2021, nearly three years ago; (ii) the child has developed a secure attachment with his maternal

- 12 -

grandmother in his [pre-adoptive] home while developing an insecure attachment with [Father] as a preoccupied or dismissive parent who can only remain engaged with the child [for one to two] hours during his supervised visits; (iii) [Father's] living arrangements have been unstable and remain inappropriate and unacceptable; (iv) [Father's] intellectual limitations have reduced his progress, if any, to a minimum, notwithstanding his efforts and love for [the child], and (v) [Father's] low level of empathy, as objectively determined by Dr. DeVincentis, was also illustrated in court by [Father's] sincere and obvious difficulty in answering several questions regarding whether the termination of his parental rights was in [the child's] best interest, [Father] only demonstrating an ability to focus on how it affected him, *i.e.*, [Father], and how it made him, *i.e.*, [Father], feel.

Trial Court Opinion, 12/27/23, at 2-3.

We agree with the trial court's analysis and conclude that the trial court did not abuse its discretion or commit an error of law when it terminated Father's parental rights under 23 Pa.C.S.A. § 2511(a)(2) and (b). Father's claim to the contrary is frivolous.

We have independently considered the issues raised within Father's brief and we have determined that the claims are frivolous. In addition, after an independent review of the entire record, we see nothing that might arguably support this appeal. The appeal is therefore wholly frivolous. Accordingly, we affirm the trial court's order and grant counsel's petition for leave to withdraw.

Petition for leave to withdraw appearance granted. Order affirmed. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


Date: 8/20/2024